**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **UNITED ENERGY WORKERS HEALTHCARE, LLC,** | ) | CASE NO. 3:24-cv-00314 |
| | ) | |
| | ) | JUDGE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **INJUNCTIVE RELIEF** |
| **LISA WEBER,** | ) | **AND DAMAGES** |
| | ) | |
| Defendant. | ) | |

Plaintiff United Energy Workers Healthcare, LLC ("UEW Healthcare"), by and through its attorneys, brings this Complaint against Defendant Lisa Weber ("Defendant" or "Weber") and alleges as follows:

## NATURE OF ACTION

1.      This action arises out of Weber's scheme to solicit UEW Healthcare's patients and to exploit its confidential and proprietary information for Weber's own benefit, in violation of Weber's agreement, Ohio common law, and the Defend Trade Secrets Act.

2.      Before asking to be terminated from UEW Healthcare on October 25, 2024, Weber was employed by UEW Healthcare as an RN Case Manager and Administrator.

3.      In this role, Weber developed and monitored patients' plans of care to include comprehensive health and psychosocial evaluation, monitored patient condition, and coordinated patient services and nursing care while following applicable rules promulgated by the Department of Labor for the Energy Employee Occupational Illness Compensation Program Act ("EEOICPA") and the Radiation Exposure Compensation Act ("RECA") programs. Weber also assessed and requested care based on the patients' plans of care and approved compliment of services by the United States Department of Labor ("DOL"). Weber also supervised licensed practical nurses

("LPN") and patients' home health aides ("HHA"), who also assisted with patient care and are typically family members of patients.

4.       UEW Healthcare spent years and significant resources developing its patients in Ohio, including a proprietary patient list, and earning a reputation for exemplary standards in service in the home health care field in the region.

5.       Weber signed noncompetition, non-solicitation, and confidentiality covenants that restricted her ability to work for a direct competitor, divulge confidential information, and to solicit UEW Healthcare's patients, after the end of her employment with UEW Healthcare.

6.       Weber has ignored her obligations by, without limitation, soliciting at least two (2) of UEW Healthcare's current patients and three (3) of UEW Healthcare's potential patients to transfer their care to another home health agency.

7.       Weber's unambiguous and ongoing violation of her agreement, upon information and belief even prior to the end of her employment with UEW Healthcare, threatens UEW Healthcare with imminent and irreparable harm. As such, this action seeks to enforce Weber's restrictive covenants, including noncompetition, non-solicitation, and confidentiality obligations, and for violations of law arising from Weber's breaches of such covenants.

## PARTIES

8.       UEW Healthcare is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Wyoming. UEW Healthcare is thus a citizen of the States of Wyoming and Ohio. UEW does business in the Southern District of Ohio.

9.       Upon information and belief, Lisa Weber is an adult individual who is a citizen of the State of Ohio and resides in the Southern District of Ohio.

2

10.     Weber is a former employee of UEW Healthcare.

11.     While working as an employee for UEW, Weber provided services to multiple patients in the Southern District of Ohio on behalf of UEW Healthcare.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because UEW Healthcare asserts claims alleging violations of a federal statute. Count II of the Complaint asserts violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA").

13.     This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

14.     Venue in this Court is appropriate because the acts complained of herein occurred within the judicial district of the Southern District of Ohio.

## BACKGROUND

A.      **UEW Healthcare's Home Health Care Business**

15.     UEW Healthcare provides home health care services to beneficiaries of the EEOICPA and the RECA. EEOICPA and RECA are administered by the DOL.

16.     Potential EEOICPA and RECA beneficiaries must be qualified for eligibility by the DOL. A home health care agency assists potential patients through the qualifying process. Among other criteria, a potential patient seeking to qualify for these benefits must arrange to receive a medical screening exam from a licensed medical doctor and a plan of care report must be signed off on. The physician's exam results and plan of care report are then submitted to the DOL. If the potential patient is deemed eligible for medical service benefits, the DOL issues an authorization letter and the home health care agency may thereafter begin providing a particular complement of

medical care services by contracting with licensed medical care providers to patients (i.e., registered nurses, certified assistants, home health aides, etc.) at privately agreed-upon rates.

17. Providing home health care to beneficiaries of EEOICPA and RECA is highly competitive. Home health care companies servicing eligible patients must expend substantial time and money upfront to locate and qualify patients. Thus, information that provides an advantage in identifying, acquiring, or generating this limited universe of patients is very valuable.

18. UEW Healthcare has substantially invested in developing its systems and methods for developing patients, which include valuable proprietary confidential information and trade secrets, including, without limitation: market demographics research; back-end parameters for social media and other online marketing platforms and methods not readily ascertainable by the public; web interface information for websites and platforms; proprietary empirical trial and error data/information developed through experimentation and fine tuning of patient generation systems; business, customer, medical care provider and vendor information and relationships; confidential patient lists; and other proprietary, confidential information and trade secrets.

**B. Weber's Employment with UEW Healthcare.**

19. On or around December 8, 2021, Weber began her employment with UEW Healthcare.

20. At the time of her termination, Weber was employed as an RN Case Manager and Administrator. In this role she developed and monitored plans of care development and regularly assessed and requested care for patients based on their needs.

21. Weber received patient assignments in the Southern District of Ohio from UEW Healthcare.

22.     Weber directly interacted with patients, coordinating their nursing care based on the patients' plan of care and approved compliment of services by the DOL.

23.     Weber also interacted with patients' HHAs, who also assist with patient care and are typically family members of patients.

24.     Because the patients receive services in their homes, each patient's medical chart is the property of UEW Healthcare but is left at the patient's home. These charts include dates of birth, social security numbers, mailing addresses, any care-related information noted by the nurse each week, and other protected confidential and proprietary information.

25.     While employed by UEW Healthcare, Weber managed and/or provided home health services to multiple patients in the Southern District of Ohio area at the time of her termination.

26.     On or about December 8, 2021, Weber signed a Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement ("Agreement") with UEW Healthcare. A true and accurate copy of the Agreement is attached as **Exhibit 1**.

27.     The Agreement included certain restrictive covenants binding on Weber, each of which was reasonably tailored to protect UEW Healthcare's legitimate business interests. (Ex. 1, §§ 2-3).

28.     These covenants include post-termination prohibitions against competition and solicitation:

**3.     <u>Your Duties Not to Compete or Solicit.</u>**

(a)     <u>Non-Competition</u>. During the period in which you are employed by or otherwise affiliated with the Company and for a period of twelve (12) months following the last day of your affiliation with the Company (the "Restricted Period"), for yourself or on behalf of any other person or entity, directly or indirectly, either as principal, partner, stockholder, officer, director, member, employee, consultant, agent, representative or in any other capacity, own, manage,

5

operate or control, or be concerned with, connected with or employed by, or otherwise associate in any manner with, engage in, or have a financial interest in, any person, business, or entity which is directly or indirectly "Competitive" (as defined below) with the business of the Company (each, a "Restricted Activity"); provided, however, that, nothing contained herein will (i) preclude you from purchasing or owning securities of any such business if such securities are publicly traded, and provided that your holdings do not exceed one percent (1%) of the issued and outstanding securities of any class of securities of such business, and/or (ii) prevent you from engaging in a Restricted Activity for or with respect to any subsidiary, division or affiliate or unit (each, a "Unit") of an entity if that Unit is not engaged in any business which is Competitive with the business of the Company, irrespective of whether some other Unit of such entity engages in such competition (as long as you do not engage in a Restricted Activity for such other Unit) and provided you present a signed statement to the Company stating the name of each such Unit, the type of business conducted by each such Unit and affirming that you will not be in any way involved with the Unit(s) which are competitive with the business of the Company.

(b)   Customer, Client, Patient and Vendor Non-Solicitation. While you are employed by the Company and during the Restricted Period, you shall not, either individually or on behalf of or through any third party, solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purpose of "Competing" (as defined below) with the Company or any parent, subsidiary or affiliate of the Company, any customers, clients, patients or vendors of the Company (or its parent, subsidiaries or affiliates) (i) which conducted business with or received services from the Company or its parent, subsidiaries or affiliates at any time during the six (6) months immediately prior to the termination of your employment with the Company, or (ii) with whom you have had contact or to whom you have provided services during your employment with the Company.

(c)   Employee/Independent Contractor Non-Solicitation. While you are employed by the Company and during the Restricted Period, you shall not, either individually or on behalf of or through any third party, directly or indirectly, hire, retain, entice, solicit or encourage any employee, consultant, contractor, or temporary worker to leave the Company or its parent, subsidiaries or affiliates, nor shall you, directly or indirectly, be involved in the hiring, retaining or recruitment of any employee, consultant, contractor, or temporary worker of the Company or its parent, subsidiaries or affiliates. This section shall prohibit the aforesaid activities by you with respect to any person both while such person is an employee, consultant, contractor, or temporary worker of the Company or such related entities, and for ninety (90) days after such person's employment, contract service or consultancy terminates.

(*Id*. at § 3).

29.     The Agreement further prohibits use for Weber's own benefit or direct and indirect disclosure of any confidential information, including, but not limited to, patient lists, patient files, contract forms, or other forms or files:

**2.      Your Duties Regarding Confidentiality and Non-Disclosure.**

(a)     The Company has developed, uses and maintains trade secrets' and other confidential and proprietary information, whether in written, oral, electronic or other form, including but not limited to, business plans, marketing plans or techniques, strategies, forecasts, patients, future or prospective patients, suppliers, licensors, licensees, partners, investors, affiliates or others, training methods and materials, financial information, pricing models and methods, sales information, pricing information, price lists, patient lists, patient files, contact forms and other books, records or files related to the Company's business, charge data, training processes and methods, service assessments, improvements, inventions, designs, methods, show-how and know-how, techniques, systems, processes, technical data and specifications, or any other technical or trade secrets of the Company or of any third party provided to you or the Company ("Confidential Information"), and the Company has taken and shall continue to take all reasonable measures to protect the confidentiality of such Confidential Information. You acknowledge that during your employment with the Company you have been and/or will be given direct access to and knowledge of Confidential Information.

(b)     You agree that you will at all times, both during the period while you are affiliated with the Company and after your affiliation with the Company ends, maintain in strict confidence and will not, without the prior written consent of the Company, use, except in the course of performance of your duties for the Company, by court order, or pursuant to Section 2(d) disclose or give to others any Confidential Information. In the event you are questioned by anyone not employed by or otherwise affiliated with the Company or by an employee of, consultant to, or contractor of the Company not authorized to receive Confidential Information, in regard to any Confidential Information, or concerning any fact or circumstance relating thereto, you will promptly notify the Company.

                    *        *        *

(e)     The terms of this Section 2 of this Agreement are in addition to, and not in lieu of, any other contractual, statutory or common law obligations that you may have relating to the protection of the Company's Confidential Information or its property. The terms of this section shall survive indefinitely your employment with the Company.

(*Id*. at § 2)

**C.      Weber Violates Her Agreement and Interferes with UEW Healthcare's Contracts and Business Relations**

7

30. On or about October 25, 2024, Weber resigned from her employment with UEW Healthcare.

31. At least two (2) of UEW Healthcare's patients and three (3) potential patients of UEW Healthcare switched home health agencies since Weber's termination in October. All of these patients were seen by Weber or performed an initial assessment with Weber while she was employed by UEW Healthcare.

32. During its investigation of Weber's patients switching home health agencies, UEW Healthcare learned that Weber approached at least one (1) UEW Healthcare patient and requested that they follow her to another home health agency.

33. Prior to her termination, Weber completed or was in the process of completing an initial assessment with at least three (3) potential UEW Healthcare patients to sign them up for care with UEW Healthcare. On Weber's last day of employment with UEW Healthcare, she emailed that all three potential patients "went with another agency."

34. Upon information and belief, in addition to the loss of patients, one (1) HHA who worked for UEW ended their employment and, upon information and belief, began working with another home health agency, further impacting UEW Healthcare's business.

35. Upon information and belief, Weber began violating her Agreement within the Restricted Period.

**D.    UEW Healthcare Demands that Weber Cease and Desist**

36. After learning of Weber's poaching of patients, UEW Healthcare contacted Weber on November 8, 2024. A true and accurate copy of this correspondence is attached as **Exhibit 2**.

37. This correspondence reminded Weber of her restrictive covenants and demanded that she cease and desist her wrongful activities.

8

38.     Weber did not respond to this letter by the deadline of November 12, 2024.

39.     UEW Healthcare reasonably believes that Weber has further breached her Agreement and plans to continue to do so by encouraging, soliciting, and/or inducing additional patients and HHAs to terminate their relationships with UEW Healthcare.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

40.     UEW Healthcare incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

41.     The Agreement containing noncompetition, non-solicitation, and confidentiality covenants signed by Weber is valid and enforceable.

42.     Weber has breached her post-termination obligations to UEW Healthcare by either starting or working for a direct competitor of UEW Healthcare and/or by soliciting, servicing, and/or otherwise interfering with UEW Healthcare's relationships with its patients and HHAs.

43.     The Agreement is supported by adequate consideration and contains reasonable restrictions that are necessary to protect UEW Healthcare's legitimate business interests and customer goodwill.

44.     UEW Healthcare fully performed its obligations under the Agreement containing noncompetition covenants, non-solicitation covenants, and confidentiality obligations.

45.     As a direct and proximate result of Weber's breaches of contract, UEW Healthcare has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and monetary damages for which there is no adequate remedy at law.

46.     Unless restrained, enjoined, and ordered to specifically abide by the post-termination obligations in the Agreement by order of this Court, Weber will persist in her breaches of contract, thereby causing immediate, irreparable damage to UEW Healthcare.

47.     Further, UEW Healthcare seeks other monetary damages to be established at trial.

48.     Additionally, UEW Healthcare is entitled to an injunction prohibiting Weber from violating the noncompetition and non-solicitation provisions of the Agreement.

**COUNT II**
**(Misappropriation of Trade Secrets, 18 U.S.C. § 1836, *et. seq.*)**

49.     UEW Healthcare incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

50.     As an employee of UEW Healthcare, Weber learned, had access to, and used UEW Healthcare's confidential information.

51.     Upon information and belief, Weber has used and disclosed UEW Healthcare's confidential information and/or will inevitably use this information to UEW Healthcare's detriment.

52.     This confidential information constitutes a valuable business asset of UEW Healthcare and is unknown to the general public and to UEW Healthcare's competitors.

53.     This confidential information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, UEW Healthcare's competitors.

54.     The above-described information constitutes trade secrets under the DTSA.

55.     Without authorization, Weber has disclosed or used, or will inevitably disclose or use, trade secrets and confidential information of UEW Healthcare.

56. Weber's unauthorized use and/or disclosure of UEW Healthcare's trade secrets and confidential information has caused or will cause harm to UEW Healthcare, including, but not limited to, immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

57. UEW Healthcare is entitled to recover its attorneys' fees due to Weber's acts or threatened acts of misappropriation.

58. Weber's misappropriation of UEW Healthcare's trade secrets was, upon information and belief, willful and malicious.

## **PRAYER FOR RELIEF**

WHEREFORE, UEW Healthcare demands judgment against Weber for the following injunctive relief:

(1) Temporary, preliminary, and/or permanent injunctive and/or other equitable relief as follows:

(a) For a period of one year from the Court's Order, Weber will not, directly or indirectly, engage in, or assist anyone else to engage in, competition or attempted competition with UEW Healthcare;

(b) Enjoin and restrain Weber and any person or entity acting in concert with her from directly or indirectly soliciting or influencing any UEW Healthcare patients with whom Weber worked or became familiar with during their affiliation to transfer their care to any other person or entity;

(c) Enjoin and restrain Weber from continuing to provide services to former patients of UEW Healthcare that transitioned their services to any other person or entity;

11

(d) Refrain from and immediately cease the misappropriation or threatened misappropriation or use of UEW Healthcare's trade secrets pursuant to the DTSA;

(e) Hold all benefits obtained from UEW Healthcare's proprietary, confidential, and trade secret information in constructive trust for UEW Healthcare's benefit;

(f) Return to UEW Healthcare all property, documents, files, reports, and other materials that Weber has in her possession, custody, or control that were originally obtained or derived from UEW Healthcare or that are owned by UEW Healthcare;

(g) Refrain from engaging in any business that would benefit from the proprietary and confidential information belonging to UEW Healthcare that is in the possession, custody, or control or known by Weber; and

(h) Require Weber to provide an accounting to Plaintiff of all earnings, profits and other economic benefits gained from her services to Plaintiff's former patients.

(2) Award UEW Healthcare compensatory damages arising out of Weber's unlawful conduct;

(3) Award UEW Healthcare punitive damages, treble damages, attorneys' fees, expenses, interest, and costs, pursuant to applicable statutory and/or common law; and

(4) Award UEW Healthcare such other legal and equitable relief as this Court deems proper.

Respectfully submitted,

*/s/ Robert D. Shank*

Robert D. Shank (0069229)
Adair M. Smith (0095790)
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Telephone: (513) 898-0050
Fax: (513) 898-0051
robert.shank@jacksonlewis.com
adair.smith@jacksonlewis.com

Attorneys for Plaintiff

December 2, 2021

Lisa Weber
2000 Fox Run Road
Dayton, OH 45459

<u>**Confidentiality, Non-Disclosure, Non-Competition, and
Non-Solicitation Agreement**</u>

Dear Ms. Lisa Weber:

        As a condition of your employment with the Company, you must sign and return this letter agreement (the "Agreement"). This Agreement confirms your promise to protect and preserve information and property which is confidential and proprietary to the United Energy Workers Healthcare Corporation ("United Energy Workers" or the "Company"), its subsidiaries and affiliates, as well as other terms and conditions of your employment, including your agreement to reasonable limitations on the scope of your employment once your affiliation with the Company ends. Therefore, in consideration of your employment with the Company and your access to the Company's goodwill and confidential information you and the Company hereby agree as follows:

      **1.**   **Certain Acknowledgements and Agreements.**

        (a)     We have discussed, and you recognize and acknowledge the competitive and proprietary aspects of the business of the Company (as defined below).

        (b)     You further acknowledge that, during the course of your affiliation with the Company, the Company will furnish, disclose or make available to you Confidential Information (as defined below) related to the Company's business and that the Company will provide you with unique and specialized training, experiences and opportunities. You also acknowledge that such Confidential Information and such training, experiences and opportunities have been developed and will be developed by the Company through the expenditure by the Company of substantial time, effort and money and that all such Confidential Information and training, experiences and opportunities could be used by you to compete with the Company. You also acknowledge that if you become employed by or affiliated with any competitor of the Company in violation of your obligations to the Company, it is inevitable that you would disclose the Confidential Information to such competitor and would use such Confidential Information, knowingly or unknowingly, on behalf of such competitor. Further, in the course of your employment with the Company, you will be introduced to and collaborate with patients, employees, independent contractors, and other business partners of the Company. You acknowledge that any and all "goodwill" created through such relationships belongs exclusively to the Company, including, without limitation, any goodwill created as a result of direct or indirect contacts or relationships between you and any patients, employees, independent contractors, or other contacts of the Company.

      **2.**   <u>**Your Duties Regarding Confidentiality and Non-Disclosure.**</u>

4846-3844-2316.1

**EXHIBIT 1 TO COMPLAINT**

(a)     The Company has developed, uses and maintains trade secrets[1] and other confidential and proprietary information, whether in written, oral, electronic or other form, including but not limited to, business plans, marketing plans or techniques, strategies, forecasts, patients, future or prospective patients, suppliers, licensors, licensees, partners, investors, affiliates or others, training methods and materials, financial information, pricing models and methods, sales information, pricing information, price lists, patient lists, patient files, contact forms and other books, records or files related to the Company's business, charge data, training processes and methods, service assessments, improvements, inventions, designs, methods, show-how and know-how, techniques, systems, processes, technical data and specifications, or any other technical or trade secrets of the Company or of any third party provided to you or the Company ("Confidential Information"), and the Company has taken and shall continue to take all reasonable measures to protect the confidentiality of such Confidential Information. You acknowledge that during your employment with the Company you have been and/or will be given direct access to and knowledge of Confidential Information.

(b)     You agree that you will at all times, both during the period while you are affiliated with the Company and after your affiliation with the Company ends, maintain in strict confidence and will not, without the prior written consent of the Company, use, except in the course of performance of your duties for the Company, by court order, or pursuant to Section 2(d) disclose or give to others any Confidential Information. In the event you are questioned by anyone not employed by or otherwise affiliated with the Company or by an employee of, consultant to, or contractor of the Company not authorized to receive Confidential Information, in regard to any Confidential Information, or concerning any fact or circumstance relating thereto, you will promptly notify the Company.

(c)     Your obligation of confidentiality under this Agreement does not apply to information that (a) becomes a matter of public knowledge through no fault of your own or (b) must be disclosed pursuant to lawful subpoena, court order or statutory requirement. However, you agree that in the event you are questioned by anyone not employed by the Company, or by an employee or independent contractor of or a consultant to the Company not authorized to receive such information, in regard to any such Confidential Information or any other secret or confidential work of the Company, you will promptly notify Chad Shumway. You further agree that you will return all Confidential Information, including all copies and versions of such Confidential Information (including but not limited to information maintained on paper, disk, CD-ROM, network server, smartphone, electronic storage drive, or any other retention device whatsoever) and other property of the Company, to the Company immediately upon termination of your employment.

(d)     Notwithstanding any provision of this Agreement prohibiting the disclosure of trade secrets or Confidential Information, you understand that you may not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that

---

[1] The phrase, "trade secrets," as used in this Agreement, will be given its broadest possible interpretation under the laws of the State of Ohio and the Defend Trade Secrets Act of 2016 ("DTSA") and will include, without limitation, anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records any secret scientific, technical, merchandising, production or management information, or any design, process, procedure, formula, invention, improvement or other confidential or proprietary information or documents.

4846-3844-2316.1

**EXHIBIT 1 TO COMPLAINT**

(i) is made (A) in confidence to a Federal, State or local government official, either directly or indirectly, or to an attorney, and (B) solely for the purpose of reporting or investigating a suspected violation of law, or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if you file a lawsuit or other court proceeding against the Company for retaliating against you for reporting a suspected violation of law, you may disclose the trade secret or Confidential Information to the attorney representing you and use the trade secret or Confidential Information in the court proceeding, if you file any document containing the trade secret or Confidential Information under seal and do not disclose the trade secret or Confidential Information, except pursuant to court order. Notwithstanding the foregoing, you acknowledge and agree that nothing in this Agreement shall limit, curtail or diminish the Company's statutory rights under the DTSA, any applicable state law regarding trade secrets, or common law.

(e)      The terms of this Section 2 of this Agreement are in addition to, and not in lieu of, any other contractual, statutory or common law obligations that you may have relating to the protection of the Company's Confidential Information or its property. The terms of this section shall survive indefinitely your employment with the Company.

### 3.   Your Duties Not to Compete or Solicit.

(a)      Non-Competition.  During the period in which you are employed by or otherwise affiliated with the Company and for a period of twelve (12) months following the last day of your affiliation with the Company (the "Restricted Period"), for yourself or on behalf of any other person or entity, directly or indirectly, either as principal, partner, stockholder, officer, director, member, employee, consultant, agent, representative or in any other capacity, own, manage, operate or control, or be concerned with, connected with or employed by, or otherwise associate in any manner with, engage in, or have a financial interest in, any person, business, or entity which is directly or indirectly "Competitive" (as defined below) with the business of the Company (each, a "Restricted Activity"); provided, however, that, nothing contained herein will (i) preclude you from purchasing or owning securities of any such business if such securities are publicly traded, and provided that your holdings do not exceed one percent (1%) of the issued and outstanding securities of any class of securities of such business, and/or (ii) prevent you from engaging in a Restricted Activity for or with respect to any subsidiary, division or affiliate or unit (each, a "Unit") of an entity if that Unit is not engaged in any business which is Competitive with the business of the Company, irrespective of whether some other Unit of such entity engages in such competition (as long as you do not engage in a Restricted Activity for such other Unit) and provided you present a signed statement to the Company stating the name of each such Unit, the type of business conducted by each such Unit and affirming that you will not be in any way involved with the Unit(s) which are competitive with the business of the Company.

(b)      Customer, Client, Patient and Vendor Non-Solicitation.  While you are employed by the Company and during the Restricted Period, you shall not, either individually or on behalf of or through any third party, solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purpose of "Competing" (as defined below) with the Company or any parent, subsidiary or affiliate of the Company, any customers, clients, patients or vendors of the Company (or its parent, subsidiaries or affiliates) (i) which conducted business with or received services

3

**EXHIBIT 1 TO COMPLAINT**

from the Company or its parent, subsidiaries or affiliates at any time during the six (6) months immediately prior to the termination of your employment with the Company, or (ii) with whom you have had contact or to whom you have provided services during your employment with the Company.

(c)     Employee/Independent Contractor Non-Solicitation. While you are employed by the Company and during the Restricted Period, you shall not, either individually or on behalf of or through any third party, directly or indirectly, hire, retain, entice, solicit or encourage any employee, consultant, contractor, or temporary worker to leave the Company or its parent, subsidiaries or affiliates, nor shall you, directly or indirectly, be involved in the hiring, retaining or recruitment of any employee, consultant, contractor, or temporary worker of the Company or its parent, subsidiaries or affiliates. This section shall prohibit the aforesaid activities by you with respect to any person both while such person is an employee, consultant, contractor, or temporary worker of the Company or such related entities, and for ninety (90) days after such person's employment, contract service or consultancy terminates.

(d)     Definitions.

i.      For the purposes of this Agreement, a business will be deemed "Competitive" with the Company if it is materially engaged in or is making plans to engage in providing home health services to individuals who receive benefits under the Energy Employees Occupational Illness Compensation Program ("EEOICPA") and/or the Radiation Exposure Compensation Act ("RECA").

(e)     Extension of Restrictions.  You acknowledge and agree that the obligations in Section 3(a)-(c) shall be extended by the duration of any violation by you of any of the covenants or obligations contained in Section 3(a)-(c), so that in any event, you shall have refrained from engaging in the activities prohibited by Section 3(a)-(c) hereof for no less than the periods of time contemplated in Sections 3(a)-(c).

(f)     Reasonableness of Restrictions.  You further recognize and acknowledge that (i) the types of employment which are prohibited by this Section 3 are narrow and reasonable in relation to the skills which represent your principal salable assets both to the Company and to other prospective employers, and (ii) the specific but broad geographical scope of the provisions of this Section 3 is reasonable, legitimate and fair to you in light of the nature of the Company's business, the Company's need to market and sell its services and products in an appropriate manner and in light of the limited restrictions on the type of activity prohibited compared to the activities for which you are qualified to earn a livelihood.

(g)     Survival of Acknowledgements and Agreements.  Your acknowledgements and agreements set forth in this Section 3 shall survive the termination of your affiliation with the Company.

4.  **Return of Information.**

4

4846-3844-2316.1

**EXHIBIT 1 TO COMPLAINT**

(a)     Upon the termination of your affiliation with the Company for any reason or for no reason, or if the Company otherwise requests, (a) you will return to the Company all tangible and/or electronic Confidential Information in your possession, custody or control, and all copies thereof (regardless how such Confidential Information or copies are maintained), and (b) you will deliver to the Company any property of the Company which may be in your possession, custody, or control, including, but not limited to, notes, notebooks, memoranda, reports, lists, records, specifications, software programs, data, graphics, computers, equipment, models, tools, cellular telephones, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in your possession, custody or control (whether prepared by you or others).  The terms of this Section 4 are in addition to, and not in lieu of, any other contractual, statutory, common law, or legal obligation that you may have relating to the protection of the Company's Confidential Information.  The terms of this Section 4 shall survive indefinitely any termination of your affiliation with the Company for any reason or for no reason.

5.      **Disclosure to Future Employers.**  You will provide, and the Company, in its discretion, may provide, a copy of this Agreement to any business or enterprise which you may directly or indirectly own, manage, operate, finance, join, control or in which you may participate in the ownership, management, operation, financing, or control, or with which you may be connected as an officer, director, employee, partner, principal, agent, representative, consultant or otherwise.

6.      **No Conflicting Agreements.**  You hereby represent and warrant that you have no commitments or obligations inconsistent with this Agreement and you will indemnify and hold the Company harmless against loss, damage, liability or expense arising from any claim based upon circumstances alleged to be inconsistent with such representation and warranty.  In addition:

(a)     You represent that you have no agreement or other legal obligation with any prior employer or any other person or entity that restricts your ability to perform any function for the Company.

(b)     You have been advised by the Company that at no time should you divulge to or use for the benefit of the Company any trade secret or confidential or proprietary information of any previous employer.  You have not divulged or used any such information for the benefit of the Company.

(c)     You recognize that the Company has received, and in the future will receive, confidential or proprietary information from third parties subject to a duty on the Company to maintain the confidentiality of such information and to use it only for certain limited purposes. You agree to hold all such confidential and proprietary information in the strictest confidence and not to disclose it to any person or entity or to use it except as necessary to carry out your work for the Company consistent with the Company's agreement with such third parties.

(d)     You acknowledge that the Company has based important business decisions on these representations, and affirm that all of the statements included herein are true.

5

**EXHIBIT 1 TO COMPLAINT**

7. **General**.

   (a)      **Agreement Enforceable Upon Material Job Change**.  You acknowledge and agree that if you should transfer between or among any affiliates of the Company, wherever situated, or be promoted, demoted, reassigned to functions other than your present functions, or have your job duties changed, altered or modified in any way, all terms of this Agreement shall continue to apply with full force.

   (b)      **Notices**.  All notices, requests, consents and other communications hereunder will be in writing, will be addressed to the receiving party's address set forth above or to such other address as a party may designate by notice hereunder, and will be either delivered by hand, sent by overnight courier, or sent by registered mail, return receipt requested, postage prepaid.

   (c)      **Entire Agreement**.  This Agreement, along with the other documents, instruments and agreements specifically referenced herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement will affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

   (d)      **Modifications and Amendments**.  The terms and provisions of this Agreement may be modified or amended only by written agreement executed by the parties hereto.

   (e)      **Waivers and Consents**.  The terms and provisions of this Agreement may be waived, or consent for the departure therefrom granted, only by written document executed by the party waiving or consenting to such terms or provisions.  No such waiver or consent will be deemed to be or will constitute a waiver or consent with respect to any other terms or provisions of this Agreement, whether or not similar.  Each such waiver or consent will be effective only in the specific instance and for the purpose for which it was given, and will not constitute a continuing waiver or consent.

   (f)      **Assignment**.  The Company, in its sole and absolute discretion, may assign its rights and obligations hereunder to any person or entity.  You may not assign your rights and obligations under this Agreement without the prior written consent of the Company and any such attempted assignment by you without the prior written consent of the Company will be void.

   (g)      **Benefit**.  All statements, representations, warranties, covenants and agreements in this Agreement will be binding on the parties hereto and will inure to the benefit of the respective successors and permitted assigns of each party hereto.  Nothing in this Agreement will be construed to create any rights or obligations except between the Company and you, and no person or entity other than the Company will be regarded as a third-party beneficiary of this Agreement.

   (h)      **Governing Law**.  This Agreement shall be deemed to have been made in the State of Ohio, and the validity, interpretation and performance of this Agreement shall be governed by,

6

**EXHIBIT 1 TO COMPLAINT**

and construed in accordance with, the internal law of Ohio, without giving effect to conflict of law principles.

     (i)    <u>Waiver of Jury Trial</u>. **Any action, demand, claim or counterclaim arising under or relating to this Agreement will be resolved by a judge alone and each of the Company and you waive any right to a jury trial thereof.**

     (j)    <u>Severability</u>. The parties intend this Agreement to be enforced as written. However, (i) if any portion or provision of this Agreement is to any extent declared illegal or unenforceable by a duly-authorized court having jurisdiction, then the remainder of this Agreement, or the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, will not be affected thereby, and each portion and provision of this Agreement will be valid and enforceable to the fullest extent permitted by law, and (ii) if any provision, or part thereof, is held to be unenforceable because of the duration of such provision or the geographic area covered thereby, the court making such determination will have the power to reduce the duration and/or geographic area of such provision, and/or to delete specific words and phrases ("blue-penciling"), and in its reduced or blue-penciled form such provision will then be enforceable and will be enforced.

     (k)    <u>Headings and Captions</u>. The headings and captions of the various subdivisions of this Agreement are for convenience of reference only and will in no way modify or affect the meaning or construction of any of the terms or provisions hereof.

     (l)    <u>Injunctive Relief and Legal Fees</u>. You hereby expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in Section 2, 3, or 4 of this Agreement will result in substantial, continuing and irreparable injury to the Company. Therefore, you acknowledge and agree that in addition to any other remedy that may be available to the Company, the Company will be entitled to injunctive or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of Section 2, 3, or 4 of this Agreement. In addition, in the event that any entity in the Company brings any action to enforce the terms of this Agreement in a court of competent jurisdiction, such entity shall be entitled, in addition to any other relief which may be awarded, to recover from you its reasonable attorneys' fees, together with such other costs and reasonable expenses incurred in connection with such litigation.

     (m)    <u>No Waiver of Rights, Powers and Remedies</u>. No failure or delay by a party hereto in exercising any right, power or remedy under this Agreement, and no course of dealing between the parties hereto or in any trade or industry, will operate as a waiver of any such right, power or remedy of the party. No single or partial exercise of any right, power or remedy under this Agreement by a party hereto, nor any abandonment or discontinuance of steps to enforce any such right, power or remedy, will preclude such party from any other or further exercise thereof or the exercise of any other right, power or remedy hereunder. The election of any remedy by a party hereto will not constitute a waiver of the right of such party to pursue other available remedies. No notice to or demand on a party not expressly required under this Agreement will entitle the party receiving such notice or demand to any other or further notice or demand in similar or other

7

**EXHIBIT 1 TO COMPLAINT**

circumstances or constitute a waiver of the rights of the party giving such notice or demand to any other or further action in any circumstances without such notice or demand.

(n) _Employment at Will_. You understand that neither this Agreement nor any other document that you have signed with the Company constitutes an implied or written employment contract or guarantee of continued employment and that your employment with the Company is on an "at-will" basis. Accordingly, you understand and agree that your employment with the Company may be terminated by either you or the Company, at any time, and for any or no reason.

(o) _Survival_. This entire Agreement and your obligations hereunder, shall survive any termination or cessation of your affiliation with the Company (for any or no reason).

(p) _Counterparts_. This Agreement may be executed in two or more counterparts, and by different parties hereto on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

(q) _Opportunity to Review_. You hereby acknowledge that you have had adequate opportunity to review these terms and conditions and to reflect upon and consider the terms and conditions of this Agreement, and that you have had the opportunity to consult with counsel of your own choosing regarding such terms. You further acknowledge that you fully understand the terms of this Agreement and have voluntarily executed this Agreement.

If the foregoing accurately sets forth our agreement, please so indicate by signing and returning to us the enclosed copy of this letter.

Sincerely,

Nicole Powell
Director of Human Resources

Acknowledged And Agreed:

Lisa Weber

12/8/21
Date

4848-3844-2310.1

8

EXHIBIT 1 TO COMPLAINT

# JacksonLewis

**Jackson Lewis P.C.**
PNC Center
201 E. Fifth Street, 26th Floor
Cincinnati OH 45202
(513) 898-0050 Direct
(513) 898-0051 Fax
jacksonlewis.com

*Robert D. Shank*
*513.873-2144 Direct*
*Robert.shank@jacksonlewis.com*

November 8, 2024

VIA OVERNIGHT DELIVERY
Lisa Weber
2000 Fox Run Road
Dayton, OH 45459

      Re:    NOTICE TO CEASE AND DESIST

Dear Ms. Weber:

I am outside counsel for United Energy Workers Healthcare Corporate ("UEW"). I am writing to bring your attention to a matter of importance concerning the contractual covenants outlined in your Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement ("Agreement"), which you signed on December 8, 2021. A copy of your Agreement is enclosed.

Your last day of employment with UEW was October 25, 2024. Thus, your contractual non-competition and non-solicitation period lasts until at least October 25, 2025. Furthermore, you have contractual and statutory obligations of indefinite duration not to use or disclose UEW's trade secrets or other confidential information.

We have been advised that you have violated one or more of your restrictive covenants through competition, solicitation, and/or violation of your confidentiality clause. UEW takes these matters very seriously to protect its business interests and expects all former employees to honor their commitments.

UEW hereby demands that you immediately cease and desist from these serious violations of your Agreement with UEW and that you immediately:

- Cease and desist from your employment with Energy Employee Services, LLC or any other competitor of UEW;
- Cease and desist from the improper solicitation of patients and employees/independent contractors affiliated with UEW; and
- Cease and desist from the improper use and misappropriation of confidential information.

**EXHIBIT 2 TO COMPLAINT**

**JacksonLewis**

November 8, 2024
Page 2

I am sending a separate letter to Energy Employee Services, LLC to put the company on notice of your restrictive covenant obligations.

UEW further requests that you preserve all information and evidence that may be relevant to any potential litigation arising and all evidence relating to any actual or prospective business relationship with Energy Employee Services, including evidence relating to any agreements and all correspondence between you and Energy Employee Services. This demand to preserve evidence includes all electronic communications, notes, letters, memoranda, proposals, reports, instant messages, text messages, voicemail messages, hiring documents, and any other information whether in written or electronic form.

UEW hopes that any further action can be resolved without the need for legal proceedings. Please provide me with a written response to this letter no later than **Tuesday, November 12, 2024**.

Very truly yours,

JACKSON LEWIS P.C.

Robert D. Shank

RDS/ams

Enclosure:
Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement

4893-5882-0599, v. 1

**EXHIBIT 2 TO COMPLAINT**

December 2, 2021

Lisa Weber
2000 Fox Run Road
Dayton, OH 45459

**Confidentiality, Non-Disclosure, Non-Competition, and
Non-Solicitation Agreement**

Dear Ms. Lisa Weber:

As a condition of your employment with the Company, you must sign and return this letter agreement (the "Agreement"). This Agreement confirms your promise to protect and preserve information and property which is confidential and proprietary to the United Energy Workers Healthcare Corporation ("United Energy Workers" or the "Company"), its subsidiaries and affiliates, as well as other terms and conditions of your employment, including your agreement to reasonable limitations on the scope of your employment once your affiliation with the Company ends. Therefore, in consideration of your employment with the Company and your access to the Company's goodwill and confidential information you and the Company hereby agree as follows:

1. **Certain Acknowledgements and Agreements.**

(a)      We have discussed, and you recognize and acknowledge the competitive and proprietary aspects of the business of the Company (as defined below).

(b)      You further acknowledge that, during the course of your affiliation with the Company, the Company will furnish, disclose or make available to you Confidential Information (as defined below) related to the Company's business and that the Company will provide you with unique and specialized training, experiences and opportunities. You also acknowledge that such Confidential Information and such training, experiences and opportunities have been developed and will be developed by the Company through the expenditure by the Company of substantial time, effort and money and that all such Confidential Information and training, experiences and opportunities could be used by you to compete with the Company. You also acknowledge that if you become employed by or affiliated with any competitor of the Company in violation of your obligations to the Company, it is inevitable that you would disclose the Confidential Information to such competitor and would use such Confidential Information, knowingly or unknowingly, on behalf of such competitor. Further, in the course of your employment with the Company, you will be introduced to and collaborate with patients, employees, independent contractors, and other business partners of the Company. You acknowledge that any and all "goodwill" created through such relationships belongs exclusively to the Company, including, without limitation, any goodwill created as a result of direct or indirect contacts or relationships between you and any patients, employees, independent contractors, or other contacts of the Company.

2. **Your Duties Regarding Confidentiality and Non-Disclosure.**

4846-3844-2316.1

**EXHIBIT 2 TO COMPLAINT**

(a)     The Company has developed, uses and maintains trade secrets[1] and other confidential and proprietary information, whether in written, oral, electronic or other form, including but not limited to, business plans, marketing plans or techniques, strategies, forecasts, patients, future or prospective patients, suppliers, licensors, licensees, partners, investors, affiliates or others, training methods and materials, financial information, pricing models and methods, sales information, pricing information, price lists, patient lists, patient files, contact forms and other books, records or files related to the Company's business, charge data, training processes and methods, service assessments, improvements, inventions, designs, methods, show-how and know-how, techniques, systems, processes, technical data and specifications, or any other technical or trade secrets of the Company or of any third party provided to you or the Company ("Confidential Information"), and the Company has taken and shall continue to take all reasonable measures to protect the confidentiality of such Confidential Information. You acknowledge that during your employment with the Company you have been and/or will be given direct access to and knowledge of Confidential Information.

(b)     You agree that you will at all times, both during the period while you are affiliated with the Company and after your affiliation with the Company ends, maintain in strict confidence and will not, without the prior written consent of the Company, use, except in the course of performance of your duties for the Company, by court order, or pursuant to Section 2(d) disclose or give to others any Confidential Information. In the event you are questioned by anyone not employed by or otherwise affiliated with the Company or by an employee of, consultant to, or contractor of the Company not authorized to receive Confidential Information, in regard to any Confidential Information, or concerning any fact or circumstance relating thereto, you will promptly notify the Company.

(c)     Your obligation of confidentiality under this Agreement does not apply to information that (a) becomes a matter of public knowledge through no fault of your own or (b) must be disclosed pursuant to lawful subpoena, court order or statutory requirement. However, you agree that in the event you are questioned by anyone not employed by the Company, or by an employee or independent contractor of or a consultant to the Company not authorized to receive such information, in regard to any such Confidential Information or any other secret or confidential work of the Company, you will promptly notify Chad Shumway. You further agree that you will return all Confidential Information, including all copies and versions of such Confidential Information (including but not limited to information maintained on paper, disk, CD-ROM, network server, smartphone, electronic storage drive, or any other retention device whatsoever) and other property of the Company, to the Company immediately upon termination of your employment.

(d)     Notwithstanding any provision of this Agreement prohibiting the disclosure of trade secrets or Confidential Information, you understand that you may not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that

---

[1] The phrase, "trade secrets," as used in this Agreement, will be given its broadest possible interpretation under the laws of the State of Ohio and the Defend Trade Secrets Act of 2016 ("DTSA") and will include, without limitation, anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records any secret scientific, technical, merchandising, production or management information, or any design, process, procedure, formula, invention, improvement or other confidential or proprietary information or documents.

2

**EXHIBIT 2 TO COMPLAINT**

(i) is made (A) in confidence to a Federal, State or local government official, either directly or indirectly, or to an attorney, and (B) solely for the purpose of reporting or investigating a suspected violation of law, or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if you file a lawsuit or other court proceeding against the Company for retaliating against you for reporting a suspected violation of law, you may disclose the trade secret or Confidential Information to the attorney representing you and use the trade secret or Confidential Information in the court proceeding, if you file any document containing the trade secret or Confidential Information under seal and do not disclose the trade secret or Confidential Information, except pursuant to court order. Notwithstanding the foregoing, you acknowledge and agree that nothing in this Agreement shall limit, curtail or diminish the Company's statutory rights under the DTSA, any applicable state law regarding trade secrets, or common law.

(e)     The terms of this Section 2 of this Agreement are in addition to, and not in lieu of, any other contractual, statutory or common law obligations that you may have relating to the protection of the Company's Confidential Information or its property. The terms of this section shall survive indefinitely your employment with the Company.

### 3.  <u>Your Duties Not to Compete or Solicit</u>.

(a)     <u>Non-Competition.</u>  During the period in which you are employed by or otherwise affiliated with the Company and for a period of twelve (12) months following the last day of your affiliation with the Company (the "Restricted Period"), for yourself or on behalf of any other person or entity, directly or indirectly, either as principal, partner, stockholder, officer, director, member, employee, consultant, agent, representative or in any other capacity, own, manage, operate or control, or be concerned with, connected with or employed by, or otherwise associate in any manner with, engage in, or have a financial interest in, any person, business, or entity which is directly or indirectly "Competitive" (as defined below) with the business of the Company (each, a "Restricted Activity"); <u>provided, however, that</u>, nothing contained herein will (i) preclude you from purchasing or owning securities of any such business if such securities are publicly traded, and provided that your holdings do not exceed one percent (1%) of the issued and outstanding securities of any class of securities of such business, and/or (ii) prevent you from engaging in a Restricted Activity for or with respect to any subsidiary, division or affiliate or unit (each, a "Unit") of an entity if that Unit is not engaged in any business which is Competitive with the business of the Company, irrespective of whether some other Unit of such entity engages in such competition (as long as you do not engage in a Restricted Activity for such other Unit) and provided you present a signed statement to the Company stating the name of each such Unit, the type of business conducted by each such Unit and affirming that you will not be in any way involved with the Unit(s) which are competitive with the business of the Company.

(b)     <u>Customer, Client, Patient and Vendor Non-Solicitation</u>. While you are employed by the Company and during the Restricted Period, you shall not, either individually or on behalf of or through any third party, solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purpose of "Competing" (as defined below) with the Company or any parent, subsidiary or affiliate of the Company, any customers, clients, patients or vendors of the Company (or its parent, subsidiaries or affiliates) (i) which conducted business with or received services

4846-3844-2316.1

**EXHIBIT 2 TO COMPLAINT**

from the Company or its parent, subsidiaries or affiliates at any time during the six (6) months immediately prior to the termination of your employment with the Company, or (ii) with whom you have had contact or to whom you have provided services during your employment with the Company.

(c)     Employee/Independent Contractor Non-Solicitation. While you are employed by the Company and during the Restricted Period, you shall not, either individually or on behalf of or through any third party, directly or indirectly, hire, retain, entice, solicit or encourage any employee, consultant, contractor, or temporary worker to leave the Company or its parent, subsidiaries or affiliates, nor shall you, directly or indirectly, be involved in the hiring, retaining or recruitment of any employee, consultant, contractor, or temporary worker of the Company or its parent, subsidiaries or affiliates. This section shall prohibit the aforesaid activities by you with respect to any person both while such person is an employee, consultant, contractor, or temporary worker of the Company or such related entities, and for ninety (90) days after such person's employment, contract service or consultancy terminates.

(d)     Definitions.

i.     For the purposes of this Agreement, a business will be deemed "Competitive" with the Company if it is materially engaged in or is making plans to engage in providing home health services to individuals who receive benefits under the Energy Employees Occupational Illness Compensation Program ("EEOICPA") and/or the Radiation Exposure Compensation Act ("RECA").

(e)     Extension of Restrictions. You acknowledge and agree that the obligations in Section 3(a)-(c) shall be extended by the duration of any violation by you of any of the covenants or obligations contained in Section 3(a)-(c), so that in any event, you shall have refrained from engaging in the activities prohibited by Section 3(a)-(c) hereof for no less than the periods of time contemplated in Sections 3(a)-(c).

(f)     Reasonableness of Restrictions. You further recognize and acknowledge that (i) the types of employment which are prohibited by this Section 3 are narrow and reasonable in relation to the skills which represent your principal salable assets both to the Company and to other prospective employers, and (ii) the specific but broad geographical scope of the provisions of this Section 3 is reasonable, legitimate and fair to you in light of the nature of the Company's business, the Company's need to market and sell its services and products in an appropriate manner and in light of the limited restrictions on the type of activity prohibited compared to the activities for which you are qualified to earn a livelihood.

(g)     Survival of Acknowledgements and Agreements. Your acknowledgements and agreements set forth in this Section 3 shall survive the termination of your affiliation with the Company.

4.  **Return of Information.**

4

4846-3844-2316.1

**EXHIBIT 2 TO COMPLAINT**

(a)      Upon the termination of your affiliation with the Company for any reason or for no reason, or if the Company otherwise requests, (a) you will return to the Company all tangible and/or electronic Confidential Information in your possession, custody or control, and all copies thereof (regardless how such Confidential Information or copies are maintained), and (b) you will deliver to the Company any property of the Company which may be in your possession, custody, or control, including, but not limited to, notes, notebooks, memoranda, reports, lists, records, specifications, software programs, data, graphics, computers, equipment, models, tools, cellular telephones, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in your possession, custody or control (whether prepared by you or others).  The terms of this Section 4 are in addition to, and not in lieu of, any other contractual, statutory, common law, or legal obligation that you may have relating to the protection of the Company's Confidential Information.  The terms of this Section 4 shall survive indefinitely any termination of your affiliation with the Company for any reason or for no reason.

5.      **Disclosure to Future Employers.**  You will provide, and the Company, in its discretion, may provide, a copy of this Agreement to any business or enterprise which you may directly or indirectly own, manage, operate, finance, join, control or in which you may participate in the ownership, management, operation, financing, or control, or with which you may be connected as an officer, director, employee, partner, principal, agent, representative, consultant or otherwise.

6.      **No Conflicting Agreements.**  You hereby represent and warrant that you have no commitments or obligations inconsistent with this Agreement and you will indemnify and hold the Company harmless against loss, damage, liability or expense arising from any claim based upon circumstances alleged to be inconsistent with such representation and warranty.  In addition:

(a)      You represent that you have no agreement or other legal obligation with any prior employer or any other person or entity that restricts your ability to perform any function for the Company.

(b)      You have been advised by the Company that at no time should you divulge to or use for the benefit of the Company any trade secret or confidential or proprietary information of any previous employer.  You have not divulged or used any such information for the benefit of the Company.

(c)      You recognize that the Company has received, and in the future will receive, confidential or proprietary information from third parties subject to a duty on the Company to maintain the confidentiality of such information and to use it only for certain limited purposes. You agree to hold all such confidential and proprietary information in the strictest confidence and not to disclose it to any person or entity or to use it except as necessary to carry out your work for the Company consistent with the Company's agreement with such third parties.

(d)      You acknowledge that the Company has based important business decisions on these representations, and affirm that all of the statements included herein are true.

5

4846-3844-2316.1

**EXHIBIT 2 TO COMPLAINT**

7. <u>General</u>.

(a)    <u>Agreement Enforceable Upon Material Job Change</u>.  You acknowledge and agree that if you should transfer between or among any affiliates of the Company, wherever situated, or be promoted, demoted, reassigned to functions other than your present functions, or have your job duties changed, altered or modified in any way, all terms of this Agreement shall continue to apply with full force.

(b)    <u>Notices</u>.  All notices, requests, consents and other communications hereunder will be in writing, will be addressed to the receiving party's address set forth above or to such other address as a party may designate by notice hereunder, and will be either delivered by hand, sent by overnight courier, or sent by registered mail, return receipt requested, postage prepaid.

(c)    <u>Entire Agreement</u>.  This Agreement, along with the other documents, instruments and agreements specifically referenced herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement will affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

(d)    <u>Modifications and Amendments</u>.  The terms and provisions of this Agreement may be modified or amended only by written agreement executed by the parties hereto.

(e)    <u>Waivers and Consents</u>.  The terms and provisions of this Agreement may be waived, or consent for the departure therefrom granted, only by written document executed by the party waiving or consenting to such terms or provisions.  No such waiver or consent will be deemed to be or will constitute a waiver or consent with respect to any other terms or provisions of this Agreement, whether or not similar.  Each such waiver or consent will be effective only in the specific instance and for the purpose for which it was given, and will not constitute a continuing waiver or consent.

(f)    <u>Assignment</u>.  The Company, in its sole and absolute discretion, may assign its rights and obligations hereunder to any person or entity.  You may not assign your rights and obligations under this Agreement without the prior written consent of the Company and any such attempted assignment by you without the prior written consent of the Company will be void.

(g)    <u>Benefit</u>.  All statements, representations, warranties, covenants and agreements in this Agreement will be binding on the parties hereto and will inure to the benefit of the respective successors and permitted assigns of each party hereto.  Nothing in this Agreement will be construed to create any rights or obligations except between the Company and you, and no person or entity other than the Company will be regarded as a third-party beneficiary of this Agreement.

(h)    <u>Governing Law</u>.  This Agreement shall be deemed to have been made in the State of Ohio, and the validity, interpretation and performance of this Agreement shall be governed by,

6

**EXHIBIT 2 TO COMPLAINT**

and construed in accordance with, the internal law of Ohio, without giving effect to conflict of law principles.

       (i)     <u>Waiver of Jury Trial</u>. **Any action, demand, claim or counterclaim arising under or relating to this Agreement will be resolved by a judge alone and each of the Company and you waive any right to a jury trial thereof.**

       (j)     <u>Severability</u>. The parties intend this Agreement to be enforced as written. However, (i) if any portion or provision of this Agreement is to any extent declared illegal or unenforceable by a duly-authorized court having jurisdiction, then the remainder of this Agreement, or the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, will not be affected thereby, and each portion and provision of this Agreement will be valid and enforceable to the fullest extent permitted by law, and (ii) if any provision, or part thereof, is held to be unenforceable because of the duration of such provision or the geographic area covered thereby, the court making such determination will have the power to reduce the duration and/or geographic area of such provision, and/or to delete specific words and phrases ("blue-penciling"), and in its reduced or blue-penciled form such provision will then be enforceable and will be enforced.

       (k)     <u>Headings and Captions</u>. The headings and captions of the various subdivisions of this Agreement are for convenience of reference only and will in no way modify or affect the meaning or construction of any of the terms or provisions hereof.

       (l)     <u>Injunctive Relief and Legal Fees</u>. You hereby expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in Section 2, 3, or 4 of this Agreement will result in substantial, continuing and irreparable injury to the Company. Therefore, you acknowledge and agree that in addition to any other remedy that may be available to the Company, the Company will be entitled to injunctive or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of Section 2, 3, or 4 of this Agreement. In addition, in the event that any entity in the Company brings any action to enforce the terms of this Agreement in a court of competent jurisdiction, such entity shall be entitled, in addition to any other relief which may be awarded, to recover from you its reasonable attorneys' fees, together with such other costs and reasonable expenses incurred in connection with such litigation.

       (m)     <u>No Waiver of Rights, Powers and Remedies</u>. No failure or delay by a party hereto in exercising any right, power or remedy under this Agreement, and no course of dealing between the parties hereto or in any trade or industry, will operate as a waiver of any such right, power or remedy of the party. No single or partial exercise of any right, power or remedy under this Agreement by a party hereto, nor any abandonment or discontinuance of steps to enforce any such right, power or remedy, will preclude such party from any other or further exercise thereof or the exercise of any other right, power or remedy hereunder. The election of any remedy by a party hereto will not constitute a waiver of the right of such party to pursue other available remedies. No notice to or demand on a party not expressly required under this Agreement will entitle the party receiving such notice or demand to any other or further notice or demand in similar or other

4846-3844-2316.1

**EXHIBIT 2 TO COMPLAINT**

circumstances or constitute a waiver of the rights of the party giving such notice or demand to any other or further action in any circumstances without such notice or demand.

(n)     Employment at Will.  You understand that neither this Agreement nor any other document that you have signed with the Company constitutes an implied or written employment contract or guarantee of continued employment and that your employment with the Company is on an "at-will" basis.  Accordingly, you understand and agree that your employment with the Company may be terminated by either you or the Company, at any time, and for any or no reason.

(o)     Survival.  This entire Agreement and your obligations hereunder, shall survive any termination or cessation of your affiliation with the Company (for any or no reason).

(p)     Counterparts.  This Agreement may be executed in two or more counterparts, and by different parties hereto on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

(q)     Opportunity to Review.  You hereby acknowledge that you have had adequate opportunity to review these terms and conditions and to reflect upon and consider the terms and conditions of this Agreement, and that you have had the opportunity to consult with counsel of your own choosing regarding such terms.  You further acknowledge that you fully understand the terms of this Agreement and have voluntarily executed this Agreement.

If the foregoing accurately sets forth our agreement, please so indicate by signing and returning to us the enclosed copy of this letter.

Sincerely,

Nicole Powell
Director of Human Resources

Acknowledged And Agreed:

Lisa Weber

12/8/21
Date

4848-3844-2310.1                                        8

**EXHIBIT 2 TO COMPLAINT**